UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KATHERINE DELGADO, ) | |
| ) | |
| *Plaintiff*, ) | Case No. 1:23-CV-14754 |
| ) | |
| v. ) | Judge Sharon Johnson Coleman |
| ) | |
| COLLECTION PROFESSIONALS, INC., ) | |
| ) | |
| *Defendant*. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Katherine Delgado brings a complaint against Defendant Collection Professionals, Inc. ("CPI") alleging violations of the federal Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, arising from CPI's attempt to collect a debt Plaintiff owed on behalf of a creditor. Before the Court is CPI's motion for summary judgment. For the following reasons, the Court grants CPI's motion.

**Background**

This case centers on medical debt Plaintiff incurred after receiving treatment from ENT Surgical Consultants LTD ("ENT") in the fall of 2021, which she failed to pay, and CPI's efforts to recover that debt per their contract with ENT. Prior to incurring her debt, Plaintiff signed an agreement with ENT which included the term: "In the event I fail to pay the amounts due for services rendered and this account is sent to an attorney or collection service, I also agree to pay a collection service fee." (Dkt. 59, Ex. 4.) Similarly, in September of 2018, ENT and CPI entered into a contract where CPI agreed to provide collection services to ENT in connection with ENT's unpaid medical bills. (Dkt. 69, Ex. 3.) The contract also provided that ENT would pay CPI a 28% contingency fee of the amount the collection agency recovered from a debtor. (*Id.*)

1

ENT sent Plaintiff a letter on March 1, 2023, indicating that she owed a balance of $460.80 that was over 90 days overdue. ENT's internal account notes reflect that on March 1, 2023, Plaintiff was assessed a "collection assessment fee" in the amount of $138.24. (*Id.*, Ex. 6.) This collection fee is reflected in ENT's internal account in an entry entitled "CPI/Collection Adjustment" posted on March 1, 2023 with an amount of $599.04. (*Id.*) CPI received Plaintiff's account for collection that same day. (*Id.*, Ex. 7.)

On March 2, 2023, CPI sent Plaintiff a collection letter that stated, "You have an account balance with Ent Surgical Consultants Ltd" and "As of March 1, 2023, you owed: $599.04." (*Id.*, Ex. 8.) The letter further indicated that between "March 1, 2023 and today [March 2, 2023]" she was charged $0 in interest, $0 in fees, and $0 had been paid or credited, and included a line item that read "Total amount of the debt now: $599.04." (*Id.*) CPI subsequently reported to Experian, a credit reporting bureau, that Plaintiff owed an unpaid balance of $599. (*Id.*, Ex. 7.) As of May 31, 2023, Plaintiff's Experian credit report included an entry from CPI that indicated that the balance was $600 as of May 2, 2023. (*Id.*, Ex. 9.) This same credit report also reflects thirty-seven open accounts and fifteen inquiries on her credit file. (*Id.*)

Sometime before June 14, 2023, Plaintiff received an alert that CPI had reported her ENT debt to Experian. On June 14, Plaintiff called CPI and asked why the report showed a balance of $599 when, to her recollection, the original balance was closer to $400. (*Id.*, Ex. 2.) The representative explained that an additional fee accrues if a person doesn't pay a debt before it goes to collections, and that since ENT had held the debt since August 2021 due to nonpayment, she had accrued additional fees. (*Id.*) The representative further noted that she had accrued $4.92 in interest since CPI had received the debt. (*Id.*) Plaintiff then stated that she would call CPI back and "try to make some type of payment arrangement" before thanking the representative and ending the call. (*Id.*) Shortly

2

after the call, Plaintiff found the letters from ENT and CPI. Outside of the debt collection letter and this phone call, Plaintiff had no additional contacts with CPI.

In her deposition, Plaintiff testified that beginning June 2023 and continuing for a few months, she experienced emotional trauma because of her efforts "to be heard" by CPI. (*Id.*, Ex. 3.) Plaintiff did not seek treatment for this emotional distress and admitted that she had experienced other times where she lost sleep due to "stress" or "things out of [her] control," for example related to her children and divorce. (*Id.*) Plaintiff also testified that she believed that CPI's incorrect reporting of her debt had "some type of negative impact" on her credit score but not much "[b]ecause it didn't bring down like [her] credit score by 20 points or anything massive like that." (*Id.*) She further claimed that this decrease in her score prevented her from refinancing her mortgage at a lower interest rate and required her daughter to co-sign on a car loan with a higher interest rate than if she had signed the loan individually. (*Id.*) Still, Plaintiff admitted to making late payments on her mortgage and multiple credit card accounts, which are accurately reflected on her credit report. (*Id.*)

In October 2023, Plaintiff filed her suit before the Court. On May 17, 2024, CPI obtained a judgment against Plaintiff in the Will County Circuit Court on the debt in the full amount of $599.04 plus attorney fees and costs. (*Id.*, Ex. 11.) Later, in October 2024, CPI brought the present motion for summary judgment.

**Legal Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). When determining whether a genuine dispute as to any material fact exists, the Court must view the evidence and draw all reasonable inferences in favor of the nonmoving

3

party. *Id.* at 255; *McDaniel v. Progress Rail Locomotive, Inc.*, 940 F.3d 360, 367 (7th Cir. 2019). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). After "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson*, 477 U.S. at 255 (citation omitted).

**Discussion**

Plaintiff's complaint alleges that CPI violated several provisions of the FDCPA, 15 U.S.C. § 1692 *et seq* through its debt-collection efforts, namely:

- Section 1692d, which prohibits behavior the natural consequence of which is to harass, oppress, or abuse a consumer in connection with the collection of a debt;

- Section 1692e, generally, and e(2) and e(10), which prohibits false, deceptive, or misleading representations about the character, amount, or legal status of a debt in connection with the collection of a debt;

- Section 1692e(8), which prohibits communicating or threatening to communicate false credit information which is known or should be known to be false, including failing to report that a debt is disputed to the credit bureaus; and

- Section 1692f and f(1), which prohibit unfair and unconscionable means to collect a debt, such as collecting any interest, fee, charge, or expense incidental to the principal obligation that is not authorized by the contract or allowed by law.

While this kitchen-sink approach is permissible at the pleading stage, summary judgment is the "put up or shut up" moment in a lawsuit, where plaintiffs "must show what evidence [they] ha[ve] that would convince a trier of fact to accept their version of events." *Blanton v. RoundPoint Mortgage*

4

*Servicing Corp.*, 825 Fed. Appx. 369, 372 n.1 (7th Cir. 2020) (internal citation omitted). To that point, the Court notes that Plaintiff provides no factual basis to support her § 1692d harassment or abuse claim. Plaintiff also does not challenge CPI's argument in its motion for summary judgment that Plaintiff did not dispute the debt during her sole call with CPI. As such, the Court grants CPI's motion for summary judgment as to Plaintiff's § 1692d claim and to her § 1692e(8) claim as it relates to CPI's alleged failure to report to Experian that Plaintiff had disputed her debt.

Plaintiff's remaining claims rise and fall on two factual bases: (1) the content of the debt collection letter CPI sent to Plaintiff, and (2) the sum of the debt that CPI reported to Experian. As to the first basis, in her response to CPI's motion for summary judgment, Plaintiff argues that the $138.24 collection fee ENT added to the $460.80 debt Plaintiff owed, as communicated in ENT's letter to Plaintiff, actually represented CPI's contingency fee payable to CPI once it collected the debt. (Dkt. 69.) Therefore, the letter CPI sent to Plaintiff including this amount falsely represented the amount of debt she owed in violation of § 1692e(2) and (10) and attempted to collect a fee that was not authorized by contract or law in violation of § 1692f(1). As to the second basis, Plaintiff alleges that despite knowing that the $138.24 fee was the contingency fee, CPI included the fee in the total "past due" amount in its report to Experian, thereby communicating false information in violation of § 1692e(8).

In addition to pushing back on each of these allegations in its motion for summary judgment, CPI also argues that Plaintiff lacks standing to pursue her claim, as her allegations of emotional distress are not sufficient to establish concrete injury under Seventh Circuit jurisprudence and her claims of financial harm due to CPI's credit reporting are both speculative and untraceable to CPI because of Plaintiff's history of late payments and credit issues. Because whether a plaintiff has standing is determinative of jurisdiction, the Court's analysis begins with that question before turning to the merits of Plaintiff's claims. *See Int'l Union of Operating Eng'rs Loc. 139, AFL-CIO v. Daley*, 983 F.3d 287,

294 (7th Cir. 2020) ("If the plaintiff lacks standing, the federal court lacks subject matter jurisdiction and the suit must be dismissed.").

*A. Standing*

To establish standing under Article III, a plaintiff must show that (1) she suffered a concrete and particularized injury-in-fact (2) that is traceable to the defendant's conduct and (3) can be redressable by judicial relief. *Pierre v. Midland Credit Mgmt., Inc.*, 29 F.4th 934, 937 (7th Cir. 2022) (citing *Lujan v. Defs. Of Wildlife*, 504 U.S. 560-61, 112 S. Ct. 2130, 2136, 119 L. Ed. 2d 351 (1992). The party invoking the court's jurisdiction bears the burden of establishing standing to sue. *Pierre*, 29 F.4th at 939 (citing *Collier v. SP Plus Corp.*, 889 F.3d 894, 896 (7th Cir. 2018) (per curiam)). "Standing must be established 'with the manner and degree of evidence required at the successive stages of the litigation.'" *Id.* (citing *Lujan*, 504 U.S. at 561). At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, as on a motion to dismiss courts "presum[e] that general allegations embrace those specific facts that are necessary to support the claim." *Lujan*, 504 U.S. at 561. But at summary judgment, plaintiffs cannot rest on such "mere allegations," but instead must "set forth" by affidavit or other evidence "specific facts," Fed. R. Civ. P. 56(e), which for purposes of the summary judgment motion will be taken to be true. *Id.*; *see also Pierre*, 29 F.4th at 939.

At issue here are the first and second elements of standing: concrete injury resulting from CPI's conduct. A concrete injury is one that is "real, and not abstract." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340, 136 S. Ct. 1540, 1548, 194 L. Ed. 2d 635 (2016) (quotation marks omitted). Qualifying injuries are those with "a close relationship to a harm traditionally recognized as providing a basis for a lawsuit in American courts." *Pierre*, 29 F.4th at 938 (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 424, 141 S. Ct. 2190, 2204, 210 L. Ed. 2d 568) (internal quotations omitted). This standard includes "traditional tangible harms, such as physical harms and monetary harms," as well as "[v]arious intangible harms," such as "reputational harms, disclosure of private information, and intrusion upon

seclusion." *Id.* (quoting *TransUnion*, 594 U.S. at 425). These harms must be supported by facts showing that there is a "causal connection between the injury and the conduct complained of" and that the injury is not "the result of the independent action of some third party not before the court." *J.B. v. Woodard*, 997 F.3d 714, 720 (7th Cir. 2021) (quoting *Lujan*, 504 U.S. at 560).

Plaintiff argues that CPI's conduct during its attempt to collect her debt injured her in three ways. First, Plaintiff argues that by reporting false information to Experian, CPI caused her reputational harm. Plaintiff further argues that because of this false report, her credit score dropped significantly, which in turn caused her to be denied financing to purchase a new vehicle and resulted in her not being able to refinance her mortgage at a more favorable interest rate. Plaintiff also alleges that she suffered emotional trauma, stress, crying, depression, and insomnia for a few months because of CPI's conduct. Finally, Plaintiff argues that CPI's failure to itemize her debt in its collection letter, in violation of § 1692e, and attempt to collect its contingency fee from Plaintiff, in violation of § 1692f, are themselves bases for standing.

Plaintiff's emotional distress that she experienced is not sufficient to show injury for any of her claims. Since the Supreme Court limited the intangible harms that can be considered concrete in *TransUnion*, the Seventh Circuit has repeatedly stated that to meet the injury-in-fact requirement for claims brought under the FDCPA, "[a] plaintiff must show a harm beyond emotional response, such as an adverse credit rating or detrimental action that the plaintiff took in reliance on the [debt collection] letters." *Pucillo v. Nat'l Credit Sys., Inc.*, 66 F.4th 634, 639 (7th Cir. 2023). "Psychological states induced" by a debt collector's conduct "fall short" of the concreteness requirement," as do "worry" and "emotional distress" arising from concern about the debt or "confusion" as to one's legal liability regarding the debt. *Pierre*, 29 F.4th at 939 (collecting cases).

Plaintiff's argument that the mere violation of § 1692e and § 1692f by providing incomplete or misleading information constitutes concrete injury also fails, as it rests on caselaw that predates

7

*TransUnion* and the Seventh Circuit's subsequent precedent. As the Seventh Circuit made clear in *Markakos v. Medicredit, Inc.*, "the violation of an FDCPA provision, whether 'procedural' or 'substantive,' does not necessarily cause an injury in fact." 997 F.3d 778, 780 (7th Cir. 2021) (collecting cases). The Seventh Circuit's holding in *Pierre v. Midland Credit Mgmt., Inc.* is instructive for this case. There, the plaintiff argued that debt collection letters sent by the defendant "falsely represented the character and legal status of the debt" in violation of § 1692e(2), were "deceptive means to collect the debt" in violation of § 1692e(10), and constituted "unfair or unconscionable means to attempt to collect the debt" in violation of § 1692f. *Pierre*, 29 F.4th at 937. But while the plaintiff stated that the letters had caused her emotional distress, she failed to show that she had taken any detrimental action because of the letters. *Id.* at 939 (explaining that "critically, [plaintiff] didn't make a payment, promise to do so, or other-wise act to her detriment in response to anything in or omitted from" the letters sent by defendant). As such, there was no concrete harm, and the plaintiff lacked standing. *Id.* at 938–39 (collecting cases holding the same). Here, because Plaintiff similarly fails to allege specific facts that she took any detrimental action as a result of CPI's letter, she lacks standing for her claims under § 1692e(2), e(10), and f(1).

Plaintiff's claim that CPI violated § 1692e(8) by reporting false information to Experian survives scrutiny under the Seventh Circuit's precedent regarding standing. As Plaintiff notes, the Seventh Circuit has held that consumers suffer reputational harm when a debt collector reports false information to a credit reporting bureau, and that this reputational harm is sufficient to establish concrete injury. *Ewing v. MED-1 Sols., LLC*, 24 F.4th 1146, 1154 (7th Cir. 2022) ("Reputational harm of this sort is a real-world injury; being portrayed as a deadbeat who does not pay her debts has real-world consequences."). Pointing to *Ewing*, Plaintiff argues that by including the contingency fee in the debt balance, CPI disseminated a false report about the amount of Plaintiff's debt to Experian and therefore caused her reputational harm. While CPI protests that the credit reports in question were

8

entirely accurate and "an accurate report cannot be the cause of an injury," this argument touches on the merits of Plaintiff's claim, not whether the Court has jurisdiction to hear it. *See Bass v. I.C. Sys., Inc.*, 316 F. Supp. 3d 1047, 1051 (N.D. Ill. 2018) (Kennelly, J.). As such, Plaintiff has standing to bring her claim that CPI reported false information to Experian in violation of § 1692e(8).[1]

For these reasons, the Court grants CPI's motion for summary judgment as to Plaintiff's claims under § 1692e(2), e(10), and f(1) for lack of standing. The Court denies CPI's motion for summary judgment as to Plaintiff's false reporting claim under § 1692e(8) on those grounds, and proceeds to the merits of that claim.

B. Merits

To support her claim that CPI reported false information to Experian in violation of § 1692e(8), Plaintiff argues that the $138.24 collection fee ENT added to the $460.80 debt Plaintiff owed actually represented CPI's contingency fee payable to CPI once it collected the debt. (Dkt. 69.) Yet despite knowing that this fee was the contingency fee, CPI included the fee in the total "past due" amount in its report to Experian, thereby misrepresenting the debt in violation of § 1692e(8).

As CPI argues in its briefing, Plaintiff's argument is a red herring that is unsupported by the record and caselaw. First, 28% of $460.80 is $129.02, a figure that is short of the $138.24 collection fee. Second, but for a compound question asked during the deposition of ENT's billing manager, Plaintiff cites no documents supporting her theory that the contingency fee and the collection fee are one and the same. *See* Dkt. 69, Ex. 3 ("Q: So what does collection charge represent; is it to cover a fee that is payable to CPI for the services CPI provides? A: Yes."). In contrast, the deposition of CPI's Chief Operating Officer explicitly states that the two fees are distinct:

---

[1] Arguably, reporting false information to a credit bureau could constitute "unfair or unconscionable means to collect or attempt to collect any debt" under § 1692f. But here, Plaintiff has offered no argument that her 1692e(8) and 1692f claims are independent of one another. Instead, both claims rest entirely on the same factual basis; that the amount of debt CPI reported was false. Because the survival of Plaintiff's § 1692f claim is predicated on the success of her § 1692e(8) claim, and because Plaintiff has offered no argument to the contrary, the Court's analysis proceeds with just the § 1692e(8) claim.

9

> Q: So looking at this contractual term that says claims shall be listed with agency on a contingency fee, so the contingency fee is added when the account is placed with CPI?
>
> A: No. The 28 percent is whatever the client lists with us, that we keep 28 percent of that figure that the client sends to us. We do not add fees onto them as an agency.

(Dkt. 59, Ex. 7.). Finally, even if Plaintiff could show that the collection fee and contingency fee were identical, the out-of-circuit cases that she cites to support her argument that including such costs in the amount reported to a credit bureau violates the FDCPA are inapposite to this circuit's precedent. As explained by the Seventh Circuit in *Bernal v. NRA Grp., LLC*, a percentage-based collection fee is a "cost" permissible for recovery from a debtor under the FDCPA. 930 F.3d 891, 894 (7th Cir. 2019).

Plaintiff's protests to the contrary, the undisputed facts of this case make clear that Plaintiff signed a contract with ENT that explicitly permitted ENT to charge collection fees in the event that Plaintiff failed to timely pay for services rendered. When Plaintiff failed to pay, ENT accordingly assessed this fee before sending the balance to CPI for collection. CPI subsequently reported that same amount, with no modification, to Experian. While the final amount may have been more than Plaintiff expected, it was not "false information." ENT was explicitly authorized to assess this additional fee, and CPI was similarly authorized to collect Plaintiff's debt per its contract with ENT. *See Zelner v. ATG Credit, LLC*, No. 17-cv-8007, 2019 WL 556737, at *3 (N.D. Ill. Feb. 12, 2019) (Guzman, J.) (denying summary judgment where Plaintiff's contract allowed for the collection of a fee) (citing *Seeger v. AFNI, Inc.*, 548 F.3d 1107, 1111 (7th Cir. 2008) (explaining that a debt collector is entitled to collect a fee if it shows that the fee is either authorized by the governing contract or that it is permitted by state law). As such, Plaintiff's § 1692e(8) claim fails, and the Court grants CPI's motion for summary judgment as to that claim.

**Conclusion**

For these reasons, the Court grants Defendant's motion for summary judgment [63].

**IT IS SO ORDERED.**

Date: 5/2/2025

Entered: _____
SHARON JOHNSON COLEMAN
United States District Judge